**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Brian Mader
and Nancy Mader

    v.                             Civil No. 16-cv-309-LM
                                      Opinion No. 2017 DNH 011

Wells Fargo Bank, N.A.


**O R D E R**

Plaintiffs Brian and Nancy Mader, initially proceeding pro se, filed a complaint to enjoin foreclosure of their property in New Hampshire Superior Court, Rockingham County. The superior court enjoined the foreclosure sale and scheduled a hearing. Before the date of the hearing, defendant Wells Fargo Bank, N.A. ("Wells Fargo") removed the action to this court and now moves to dismiss the Maders' amended complaint. The Maders, now represented by counsel, object.

**Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citations and internal quotation marks omitted). A

claim is facially plausible "when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### Background[1]

Brian and Nancy Mader are residents and mortgagors of a
property located at 47 Blossom Road in Windham, New Hampshire
(the "property").  On March 9, 2006, the Maders executed a
promissory note in favor of World Savings Bank, FSB ("WSB"), in
exchange for a $543,750.00 loan.  The Maders granted a first
priority mortgage on the property to WSB to secure the loan (the
"mortgage").  Doc. no. 5-3.[2]  Wells Fargo is the successor-by-
merger to WSB.  See Foley, 772 F.3d at 68 n.2.

---

[1] The facts are drawn from the Maders' amended complaint and
the exhibits attached thereto.  The court also considers the
Maders' mortgage, which is publicly recorded (Rockingham County
Registry of Deeds, Book 4628, Page 1120).  Additionally, the
court considers the docket from the Maders' bankruptcy
proceeding, which is a public record and attached to Wells
Fargo's motion to dismiss.  See Freeman v. Town of Hudson, 714
F.3d 29, 36 (1st Cir. 2013) (in deciding a motion to dismiss,
the court may consider "documents the authenticity of which are
not disputed by the parties; official public records; documents
central to the plaintiffs' claim; and documents sufficiently
referred to in the complaint.") (quoting Watterson v. Page, 987
F.2d 1, 3 (1st Cir. 1993)) (alterations omitted).

[2] Wells Fargo previously attached both the note and mortgage
to its motion to dismiss the original complaint, which the court
denied, without prejudice, as moot.  Although it was not re-
attached to the present motion to dismiss, the court will
consider the mortgage because it is publicly recorded.  For

In 2007, the Maders began experiencing financial difficulties.  Their financial situation improved somewhat in 2010, and the Maders were approved for a loan modification.  Unfortunately, Mr. Mader was laid off shortly thereafter, and the Maders began having difficulties making their mortgage payments under the modification agreement.

On May 14, 2013, the Maders submitted a voluntary petition for Chapter 13 bankruptcy.  Doc. no. 13-2 at 2.  On June 20, 2014, the Maders voluntarily converted their bankruptcy to a Chapter 7 case.  Id. at 7.  On February 13, 2015, the Maders received a discharge of their personal liability on the debt under 11 U.S.C. § 727, but the mortgage remained a valid lien on the property.  See id. at 11.[3]

In 2016, the Maders sought a loan modification from Wells Fargo, sending a letter of hardship and a set of complete financial records.  Wells Fargo requested and re-requested documents from the Maders related to their modification application.  The Maders allege that Wells Fargo "misled the [Maders] about the status of their modification request."  Doc.

---

simplicity, the court will cite to the previously attached mortgage, i.e., doc. no. 5-3.

[3] The Maders have not alleged that the debt was reaffirmed or that they have made any mortgage payments since their discharge.

no. 11 at ¶ 15.[4]  Wells Fargo "discouraged the [Maders] from seeking legal counsel to address this issue."  Id. at ¶ 16. Wells Fargo also "falsely informed the [Maders] that the modification would not affect their credit."  Id. at ¶ 18.  "The [Maders] only agreed to this modification with the knowledge that it would not affect their credit."  Id. at ¶ 33. Eventually, Wells Fargo denied the Maders' request for a modification.

At some point, Wells Fargo informed the Maders that it intended to foreclose on the property and that it had scheduled a foreclosure sale for July 7, 2016.  On June 22, 2016, the Maders, initially proceeding pro se, filed a complaint against Wells Fargo in state court to enjoin foreclosure of the property.  The superior court issued a preliminary ex parte order to enjoin Wells Fargo from foreclosing on the property and scheduled a hearing for July 11, 2016.

Days before the scheduled hearing, Wells Fargo removed the case to this court and subsequently moved to dismiss the Maders' complaint for failure to state a claim.  Doc. no. 5.  The Maders, now represented by counsel, did not object to Wells

---

[4] The amended complaint contains several allegations regarding Wells Fargo's response to the Maders' loan modification request.  These allegations, read in the light most favorable to the Maders, appear to reference the 2016 modification application that Wells Fargo denied, not the 2010 modification request that was approved.

Fargo's motion to dismiss, but instead moved for leave to amend
their original complaint.  Doc. no. 8.  The court granted the
Maders' motion to amend and denied, without prejudice, Wells
Fargo's motion to dismiss as moot.  Doc. no. 10.

## Discussion

The Maders filed their amended complaint (doc. no. 11),
alleging seven separate claims: (I) negligence; (II) negligent
misrepresentation; (III) breach of the covenant of good faith
and fair dealing; (IV) violation of the New Hampshire Consumer
Protection Act ("CPA"), N.H. Rev. Stat. Ann. § 358-A; (V)
negligent infliction of emotional distress ("NIED"); (VI)
violation of the Real Estate Settlement Procedures Act
("RESPA"), 12 U.S.C. § 2605(k); and (VII) lack of standing to
foreclose.  Wells Fargo now moves to dismiss the amended
complaint (doc. no. 13) and the Maders object (doc. no. 14).
The court addresses each of the Maders' claims below.

## I.   Count I: Negligence

The Maders assert a negligence claim in Count I of their
amended complaint.  They allege that Wells Fargo owed the Maders
an affirmative duty to act reasonably, and that Wells Fargo
breached this duty by making "misrepresentations and omissions
through [its] handling of the [Maders'] loan."  Doc no. 11 at

¶ 27.  Wells Fargo argues that it owed no duty of care and that the Maders' claim is barred by the economic loss doctrine.

Under New Hampshire law, the contractual relationship between a lender and borrower typically precludes recovery in tort.  Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 133 (D.N.H. 2012) (citing Wyle v. Lees, 162 N.H. 406, 409-10 (2011)).  Based on this rule, known as the "economic loss doctrine," a borrower cannot pursue tort recovery for purely economic damages arising in the context of a contract relationship with the lender.  Schaefer v. IndyMac Mortg. Servs., 731 F.3d 98, 103 (1st Cir. 2013) (citing Plourde Sand & Gravel Co. v. JGI E., Inc., 154 N.H. 791, 794 (2007)) (further citations omitted).  New Hampshire law recognizes certain exceptions to this rule, including when the lender voluntarily assumes a duty outside the normal performance of the contract. See Moore, 848 F. Supp. 2d at 133.  In such a case, the borrower must establish that the lender voluntarily engaged in "activities beyond those traditionally associated with the normal role of a money lender."  Id. (quoting Seymour v. N.H. Sav. Bank, 131 N.H. 753, 759 (1989)).

Here, the Maders have not alleged any facts indicating that Wells Fargo voluntarily assumed an extra-contractual duty.  They merely allege that Wells Fargo "kept the [Maders] off track and misinformed regarding the [Maders'] modification application,"

doc. no. 11 at ¶ 29, "informed the [Maders] falsely that the loan modification would not affect their credit," id. at ¶ 32, and "present[ed] themselves as experts in the field of mortgage work out resolution." Id. at ¶ 37.  The Maders do not allege any wrongdoing unrelated to their mortgage or loan modification application and, as such, have not plausibly alleged that Wells Fargo assumed a duty outside the traditional lender-borrower relationship.  See Bowser v. MTGLQ Investors, LP, No. 15-cv-154-LM, 2015 WL 4771337, at *2 (D.N.H. Aug. 11, 2015).  Therefore, the Maders' negligence claim is barred by the economic loss doctrine.  Accordingly, Count I of the amended complaint is dismissed.

II.  Count II: Negligent Misrepresentation

In Count II, the Maders allege that Wells Fargo made numerous misrepresentations related to the mortgage and loan modification application, including that a loan modification would not affect the Maders' credit.

The elements of a negligent misrepresentation claim under New Hampshire law are "a negligent misrepresentation of a material fact by the defendant and justifiable reliance by the plaintiff." Wyle, 162 N.H. at 413 (citation omitted).  "It is the duty of one who volunteers information to another not having equal knowledge, with the intention that he will act upon it, to

7

exercise reasonable care to verify the truth of his statements before making them." Id. (citation omitted).

Although the Maders allege that Wells Fargo made several misrepresentations, the economic loss doctrine bars negligent misrepresentation claims in a traditional borrower-lender contractual relationship.  See Schaefer, 731 F.3d at 108-09; see also Riggieri v. Caliber Home Loans, Inc., No. 16-cv-20-LM, 2016 WL 4133513, at *4-5 (D.N.H. Aug. 3, 2016).  However, the economic loss doctrine does not bar negligent misrepresentation claims between contracting parties if the misrepresentation induced a party to enter into the contract.  See Wyle, 162 N.H. at 411.  New Hampshire law also recognizes a narrow exception to the economic loss doctrine when the defendant who made the misrepresentation is "in the business of supplying information." See Schaefer, 731 F.3d at 108 (citing Plourde, 154 N.H. at 795).

The Maders assert that their claim is not barred because Wells Fargo is in the business of supplying information. Despite the Maders' allegation, the First Circuit has made clear that negligent misrepresentation claims asserted against loan servicers do not fall within this limited exception to the economic loss doctrine.  See Schaefer, 731 F.3d at 108-09; see also Riggieri, 2016 WL 4133513, at *5.  Thus, the court cannot plausibly conclude that Wells Fargo is in the business of supplying information.

Moreover, because Wells Fargo denied the Maders' 2016 loan modification application, the Maders cannot plausibly allege that they were induced into entering into that contract.  As alleged, the misrepresentations did not operate to induce the Maders into entering into a contract, but instead "occurred during the [mortgage's] performance and concerned the subject matter of the . . . mortgage."  Bowser, 2015 WL 4771337 at *5 (citing Wyle, 162 N.H. at 109).  Representations between contracting parties that are related to the mortgage and performance under the mortgage cannot form the basis of a tort claim.  In sum, because the Maders were not induced into entering into a loan modification agreement, their negligent misrepresentation claim is barred by the economic loss doctrine. Therefore, Count II of the amended complaint is dismissed.

III. Count III: Breach of the Covenant of Good Faith and Fair Dealing

In Count III, the Maders allege that Wells Fargo breached the implied covenant of good faith and fair dealing in at least two ways: 1) "[b]y keeping [them] uninformed and off track with their modification application"; and 2) "[b]y ignoring [their] ability to pay and keeping them waiting to achieve [a] work out resolution while [Wells Fargo] continued to add interest, late payments and other fees to [their] loan."  Doc. no. 11 at ¶ 66. The Maders argue that "[i]t is not a breach of the covenant of

good faith and fair dealing to foreclose, but it is a violation
to exercise discretion in such a way that the [Maders] are
forced in to foreclosure despite their attempts to pay or modify
the loan." Doc. no. 14 at 5.

Under New Hampshire law, "[i]n every agreement, there is an
implied covenant that the parties will act in good faith and
fairly with one another." Birch Broad., Inc. v. Capitol Broad.
Corp., 161 N.H. 192, 198 (2010) (citation omitted).  However,
"the covenant of good faith and fair dealing in a loan agreement
cannot be used to require the lender to modify or restructure
the loan." Moore, 848 F. Supp. 2d at 130 (citing cases).  This
court has repeatedly held that "lenders have no duty absent
explicit contractual language to modify a loan or forbear from
foreclosure."  See Towle v. Ocwen Loan Servicing, LLC, No. 15-
cv-189-LM, 2015 WL 4506964, at *2 (D.N.H. July 23, 2015) (citing
cases); see also Ruivo v. Wells Fargo Bank, N.A., No. 11-cv-466-
PB, 2012 WL 5845452, at *4 (D.N.H. Nov. 19, 2012) ("Parties are
bound by the agreements they enter into and the court will not
use the implied covenant of good faith and fair dealing to force
a party to rewrite a contract so as to avoid a harsh or
inequitable result.").

Under the terms of the Maders' mortgage, modifying the loan
was a discretionary choice, and both the borrower and lender had
to agree in writing to any modification.  See doc. no. 5-3 at 12

10

¶ 23.  Although the amended complaint recites the necessary
elements of a contract, the Maders have pled no facts showing
that the parties had an enforceable agreement to modify the
loan.  Moreover, because the mortgage did not require Wells
Fargo to consider the Maders' modification application, Wells
Fargo's alleged conduct in processing and ultimately denying the
Maders' application while pursuing foreclosure does not support
a good faith and fair dealing claim.  See, e.g., Frangos v. Bank
of Am., N.A., No. 13-cv-472-PB, 2014 WL 3699490, at *3-4 (D.N.H.
July 24, 2014); Schaefer v. IndyMac Mortg. Servs., No. 12-cv-
159-JD, 2012 WL 4929094, at *6 (D.N.H. Oct. 16, 2012)
("[B]ecause the defendants were not required to consider
Schaefer's loan modification application, they similarly cannot
be liable for preparing to foreclose on Schaefer's home while
simultaneously considering his loan modification application."),
aff'd, 731 F.3d 98 (1st Cir. 2013).

    The Maders' claim is identical to the plaintiff's good
faith and fair dealing claim in Gasparik v. Fed. Nat'l Mortg.
Ass'n, which the court dismissed for failure to state a claim.
No. 16-cv-147-AJ, 2016 WL 7015672, at *4-5 (D.N.H. Dec. 1,
2016).  Here, as in Gasparik, the mortgage did not require Wells
Fargo to "restructure the mortgage or otherwise forebear from
foreclosing while the [Maders] pursued loan modification or
acquired funds to pay the arrearage."  Id. at *5.  Thus, despite

11

the Maders' efforts to modify the loan, Wells Fargo's conduct
does not give rise to a claim for breach of the implied covenant
of good faith and fair dealing.  Accordingly, Count III of the
amended complaint is dismissed.

IV.   Count IV: Violation of the CPA

Count IV alleges that Wells Fargo committed unfair and
deceptive practices in violation of the CPA.  In their objection
to Wells Fargo's motion to dismiss, the Maders conceded that
Wells Fargo is exempt from the CPA and voluntarily dismissed the
claim.  Doc. no. 14 at 5.  Count IV of the amended complaint is
therefore dismissed.

V.   Count V: NIED

In Count V, the Maders allege that Wells Fargo's actions
have caused the Maders to suffer severe emotional distress.
"The elements of a claim for negligent infliction of emotional
distress include: (1) causal negligence of the defendant; (2)
foreseeability; and (3) serious mental and emotional harm
accompanied by objective physical symptoms." Tessier v.
Rockefeller, 162 N.H. 324, 342 (2011) (internal quotation marks
omitted).  "[A] claim for NIED, like any other negligence claim,
demands the existence of a duty from the defendant to the
plaintiff." Moore, 848 F. Supp. 2d at 135 (quoting BK v. N.H.

Dep't of Health & Human Servs., 814 F. Supp. 2d 59, 72 (D.N.H. 2011)).

As discussed above, the Maders failed to state a claim for negligence because they have not plausibly alleged that Wells Fargo owed them a voluntarily assumed duty.  For the same reason, the Maders' claim for NIED must also fail.  Accordingly, Count V of the amended complaint is dismissed.

VI.   Count VI: Violation of RESPA

Count VI of the amended complaint alleges that Wells Fargo violated RESPA.  The Maders cite language in RESPA which prohibits servicers from "fail[ing] to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."  12 U.S.C. § 2605(k)(1)(C) (emphasis added). The Maders allege that Wells Fargo failed to respond to the Maders' requests to avoid foreclosure.

The Maders allege no facts to support a plausible claim under § 2605(k)(1)(C).  That subsection addresses a borrower's request to correct errors relating to, among other things, a borrower's attempt to avoid foreclosure.  The Maders have not alleged that they made any request to Wells Fargo to correct an

error, or that Wells Fargo failed to respond to such a request.
See Gasparik, 2016 WL 7015672, at *7.

The Maders appear to be asserting a claim under 12 CFR §
1024.41, a regulation under RESPA requiring servicers to follow
certain procedures in evaluating a borrower's loss mitigation
application.  In certain circumstances, a servicer is required
to evaluate a borrower's complete loss mitigation application
for all available loss mitigation options.  However, the
provisions of § 1024.41 do not require a servicer to offer a
borrower a loan modification.  12 CFR § 1024.41(a).

The Maders allege that they sent Wells Fargo a letter of
hardship and a complete set of financial records in their loan
modification application.  Although the Maders assert that Wells
Fargo failed to respond to their request to avoid foreclosure,
the Maders acknowledge that Wells Fargo eventually denied their
modification application.  See doc. no. 11 at ¶ 17.  Thus, the
Maders' amended complaint establishes that Wells Fargo did in
fact respond to the Maders' request to avoid foreclosure and
evaluate their modification application.  While the Maders were
dissatisfied with Wells Fargo's ultimate decision to deny their
application, RESPA does not require Wells Fargo to grant them a
modification.  Therefore, the Maders have not alleged a
plausible claim under RESPA.  Accordingly, Count VI is
dismissed.

14

VI.  <u>Count VII: Standing</u>

The Maders' final count addresses Wells Fargo's standing to foreclose on the property.  The Maders suggest that in order to have standing to foreclose, Wells Fargo must produce a properly executed promissory note.  This claim fails for two reasons.

First, the Maders do not actually allege that Wells Fargo does not hold the promissory note.  Rather, the Maders merely suggest that if Wells Fargo cannot produce the note, it would lack standing to foreclose.  Thus, this count consists of a wholly speculative assertion with no factual basis.

Second, it appears that Wells Fargo can in fact produce the promissory note, as Wells Fargo attached the note to its motion to dismiss the original complaint.  <u>See</u> doc. no. 5-2.  Because Wells Fargo is the successor-by-merger to WSB, the original holder of the note, "it is implausible to infer that Wells Fargo is not, in fact, the present holder of the note." Mason v. Wells Fargo Bank, N.A., No. 14-cv-77-JL, 2014 WL 2737601, at *4 n.4 (D.N.H. June 17, 2014).  Accordingly, Count VII is dismissed.

## Conclusion

For the foregoing reasons, Wells Fargo's motion to dismiss (doc. no. 13) is granted.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 17, 2017

cc:  Keith A. Mathews, Esq.
     Michael R. Stanley, Esq.

16